## MORGAN v. HARPER.  (No. 269–3495.)

(Commission of Appeals of Texas, Section B. Jan. 11, 1922.)

**1. Brokers ⟨⟩100 — Purchaser from agent must look to his authority.**

He who buys from an agent acting under special or express authority, whether written or verbal, must look to such authority, and cannot protect his purchase as an act of good faith toward the real owner, known to be such, on the ground he believed the pretended agent had authority, when, by an examination of the acts relied on as conferring such authority, he might have known that he had not; no man being bound by the act of another without or beyond his consent.

**2. Principal and agent ⟨⟩33—Agent's authority revocable by simple, private declaration at any time, with or without reason.**

The authority of an agent, when revocable, may be revoked by a simple, private declaration at any time, with or without reason.

**3. Brokers ⟨⟩106—Exclusion of purchaser's testimony that he contracted with reference to broker's contract with owner held erroneous.**

In a suit for specific performance of a contract to convey land entered into with the owner's agent, with whom the agency contract had been left after the owner revoked the agency, the court erred in excluding plaintiff's testimony that he knew of the agency contract when he signed the sales contract and contracted with reference thereto; the owner in such case being estopped from showing his revocation of the agent's authority in the absence of notice to third persons.

**4. Principal and agent ⟨⟩151 (3)—Principal revoking special agent's authority must use reasonable care to prevent third persons being misled.**

While, ordinarily, notice of revocation of a special agent's authority need not be given except to the agent, a principal, who seeks to revoke such authority before its execution, must do whatever he reasonably should to prevent third persons, who are charged with the duty of protecting themselves in dealing with agents, from being misled by acting on a power withdrawn.

**5. Brokers ⟨⟩100—One purchasing land in reliance merely on agent's misrepresentations as to authority which had been revoked cannot compel conveyance.**

One who purchases land from an agent in reliance merely on the latter's representation, made after the revocation of the agency, that he was authorized to sell the land, is negligent, and cannot recover in a suit for specific performance of the contract, since a party dealing with an agent must not rely on what he alone may say or do, but must be able to trace the authority on which he relies back to some word or deed of the principal.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by R. Morgan against J. W. Harper. From a judgment of the Court of Civil Appeals (219 S. W. 888), affirming a judgment for defendant, plaintiff brings error. Reversed and remanded.

Wear & Frazier, of Hillsboro, and Walker & Baker, of Cleburne, for plaintiff in error.

B. Y. Cummings, of Wichita Falls, and V. L. Shurtleff, of Breckenridge, for defendant in error.

HAMILTON, J.. We adopt the statement of the case made by plaintiff in error, as follows:

"This suit was instituted by R. Morgan, appellant, against J. W. Harper, appellee, in the district court of Hill county for the specific performance of a written contract to convey 132 acres of land.

"The appellant alleged, in substance, that the appellee was the owner of the tract of land described in the petition, containing 132 acres, more or less, and that he desired to sell the land, and listed it for sale with H. H. Simmons, of Hillsboro, Tex., as his exclusive agent, at $125 per acre, with a cash payment of $4,000 or more; that the listing contract with Simmons was in writing, and was executed June 16, 1917, and authorized a sale at any time prior to December 1, 1917, the trade to be closed on or before January 1, 1918, and that Simmons was authorized to execute contract with the purchaser, and that thereafter, in October, 1917, the appellant purchased the land from Simmons on the terms authorized by the listing contract, and executed a written contract to pay $125 therefor in cash on the 1st day of January, 1918; the contract was in triplicate and was duly executed by the appellant and Simmons as agent for the appellee; that the appellant was ready and able and offered to close the trade at the time fixed by the contract, and that the appellee refused to consummate it. The appellant also alleged that he was still ready and able to close the trade, and offered to pay the entire consideration, and prayed for a specific performance of the contract.

"The appellee filed a general denial, and specifically alleged that he had revoked Simmons' authority to sell the land prior to the execution of the contract with the appellant, and that Simmons had no authority to execute the contract.

"The appellant filed a supplemental petition, denying the allegations in the answer, and specially alleged that, if the appellee revoked, or attempted to revoke, the contract, such action was unknown to him, and that, at the time he executed the contract of purchase, he believed that Simmons had authority to sell the land for the appellee and to execute the contract, and that Simmons was acting within the scope of his authority in executing the contract, and also that the appellee ratified the execution of the contract.

"The appellee in his supplemental answer excepted to the allegations in the supplemental petition on the ground that it was immaterial whether the appellant knew that Simmons' au-

thority had been revoked or not; and that appellant's belief as to Simmons' authority did not confer any rights as against the appellee. The special exceptions were sustained.

"The appellant alleged in his amended original petition that he made a deposit of $2,000 with H. H. Simmons as earnest of the contract at the time of its execution, and that he had no knowledge at that time that the appellee did not intend to comply with the contract executed to Simmons, and that he believed that Simmons was the duly authorized agent of the appellee, and acted on said belief in the execution of the contract, and without any knowledge that the appellee had revoked, or intended to revoke, his contract with Simmons, and that the appellee was estopped to deny the validity of the contract."

The trial court instructed the jury to return a verdict in favor of the defendant, and rendered judgment in accordance therewith. Plaintiff appealed, and the Court of Civil Appeals affirmed the judgment. 219 S. W. 888.

[1] The rule of the common law applicable to express or special agencies is that no man can be bound by the act of another without or beyond his consent; and where an agent acts under special or express authority, whether written or verbal, the party dealing with him is bound to know, at his peril, what the power of the agent is and understand its legal effect.

He who buys from an agent must look to his authority, because he is not the apparent owner, and his right to sell depends on the existence and validity of the power under which he assumes to act. This the purchaser must look to at his peril; and he cannot protect his purchase as an act of good faith toward the real owner, known to be such, on the ground that he believed the pretended agent had authority when, by an examination of the act or acts relied on as conferring the authority, he might have known that he had not. Robson v. Osborn, 13 Tex. 307; Dorn v. Dunham, 24 Tex. 366.

" * * * An assumption of authority to act as agent for another of itself challenges inquiry. Like a railroad crossing, it should be in itself a sign of danger and suggest the duty to 'stop, look and listen.' It is therefore declared to be a fundamental rule, never to be lost sight of and not easily to be overestimated, that persons dealing with an assumed agent, whether the assumed agency be a general or special one, are bound at their peril, if they would hold the principal, to ascertain, not only the fact of the agency, but the nature and extent of the authority, and in case either is controverted, the burden of proof is upon them to establish it." 1 Mechem on Agency, § 743.

" * * * The party dealing with the agent must not rely on what the agent alone may say or do, and a fortiori not on what mere strangers say or do, but he must be able to trace the authority on which he relies back to some word or deed of the principal.

"It is not meant by this that the party deal-

ing with the agent must always go and make inquiries of the principal in person. Such a rule would often be inconvenient and impracticable. What is meant, as has been stated, is, that the party dealing with the agent must be able to deduce the authority relied upon from the acts of the principal whom he seeks to charge. He may rely on evidence furnished by the principal. * * *

"Ordinarily in our law it is not within the power of an agent to bind his principal by the evidence which he alone puts forward as to his own authority. The principal may, of course, give him that power. He may supply him with documentary or other evidence to be exhibited; he may refer persons to him to disclose his authority; he may agree to be bound by whatever the agent may assume to do; and all this may be done expressly or impliedly, and where it is done the principal will be bound accordingly." 1 Mechem on Agency, § 750.

[2] In this case Harper supplied his agent with written authority, the empowering paragraph of which reads:

"I hereby authorize H. H. Simmons, of Hillsboro, Texas, as my sole agent to sell or trade the property described on reverse side hereof at the price and upon the terms above named or upon any other price or terms that I may agree to, from this date to 12/1/17 and I authorize him to close trade by written contract in accordance with above terms and conditions, upon purchaser paying to him a sum, either in money or by note, satisfactory to said H. H. Simmons as my agent, and I obligate myself in an amount equal to the obligation put up by purchaser to place at an early date, at the convenience of H. H. Simmons, who is to prepare same, deed executed by myself and wife, with said obligation and contract held in connection with sale, in accordance with terms of same."

He afterwards sent his son to Simmons with this instruction:

"Tell Mr. Simmons and Real Estate Company that the land has advanced so much that I couldn't afford to sell it at that price and to not sell it for that." * * * My son came back and told me he delivered that message to Simmons, or at his office."

Simmons testified:

"At the time I signed the contract binding, or attempting to bind, Mr. Harper to convey the land, I had received notice from him or had been notified to withdraw the land from the market. I learned it through F. W. Simmons."

This was sufficient to revoke his authority. The authority of an agent, when revocable, may be revoked "by a simple and private declaration." 1 Mechem on Agency, § 613.

[3] A principal has the power to revoke the authority of such an agent at any time, with or without reason therefor. Mechem on Agency, § 561 et seq. But when Harper revoked the agency he left the contract authorizing the agency in Simmons' hands.

---

This showed on its face that Simmons was authorized to sell the land "to December 1, 1917." Plaintiff in error would have testified, if he had been permitted by the court to do so, that he knew of the agency contract at the time he signed the sales contract, and that he "contracted with reference thereto."

Plaintiff in error assigns as error the action of the court in excluding this testimony. The assignment must be sustained. If plaintiff in error saw the written contract authorizing Simmons to sell the land to December 1, 1917, at the time he made the contract of purchase, and in reliance on that authority he bought the land from Simmons, believing him to be the agent of Harper, we think Harper is estopped from showing the revocation of Simmons' authority, and that he is bound by the contract of sale.

[4] No attempt to give notice of the revocation of agency to third persons was made by Harper. While, ordinarily, notice of the revocation of the authority of a special agent is not required to be given, except to the agent, where the principal seeks to revoke the authority before its execution, "he must do whatever he reasonably should, if anything, to prevent third persons who are charged with the duty of protecting themselves, in dealing with agents, from being misled by acting upon a power withdrawn." Mechem on Agency, § 630. Harper should have withdrawn from Simmons the written authority so that he might not lead third persons to believe he was authorized to December 1, 1917, to sell the land. If Simmons refused to give it up, Harper was under the duty to give notice of his revocation of the purported authority shown on its face to exist to that date. Since he did neither, if the agent used the instrument left in his hands to mislead Morgan by exhibiting it to him, Harper must suffer the injury, if any. Where one of two equally innocent parties must suffer by reason of the fraud of another, the loss should fall upon him whose negligent act or omission has enabled the wrongdoer to commit the fraud.

"When a principal conducts his affairs so negligently as to lead third persons to reasonably suppose that his agent has full powers, then if the agent exceeds his authority the principal must bear the loss. It is true that the principal is not chargeable with culpa levissima. He is not chargeable, in other words, with the consequences of those negligences into which good business men are liable to fall. But, if he is negligent to an extent beyond what is usual with good business men in his department, and if in consequence of his negligence third parties repose trust on the supposed agent, then the loss, if loss accrue, must fall on the principal." Wharton on Agency, § 123.

[5] If Harper merely depended on Simmons' representation, made after the revoca-

tion of the agency, that he was authorized by the contract to sell the land, we think Morgan was negligent and remiss in trusting to such representations because "a party dealing with the agent must not rely on what the agent alone may say or do * * * but he must be able to trace the authority on which he relies back to some word or deed of the principal," 1 Mechem on Agency, § 750.

If, on another trial, it should develop that Morgan "knew of the existence of the contract" merely from such representations of the agent, he is not entitled to judgment.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that the cause be remanded to the district court for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.