## GROVIER–STARR–PARVIN CO. v. N. NIGRO & CO. (No. 8622.)

(Court of Civil Appeals of Texas. Dallas. Feb. 25, 1922. Rehearing Denied April 15, 1922.)

1. **Appeal and error ⬄724(2)—Objections to assignments relating to errors apparent on record overruled.**

Objections to assignments of error filed August 10, 1921, "relating to fundamental errors of law apparent upon the record," must be overruled, where enough is revealed to make such errors clearly open to observation, as provided by old rule 34 for Courts of Civil Appeals (142 S. W. xiii), the new rules for briefing cases amending rule 34, though adopted June 22, 1921, not being effective until September 1st (230 S. W. vii).

2. **Brokers ⬄100—Acts after a sale for which brokers were employed must be authorized or ratified by principal to be binding.**

The authority conferred on brokers employed to sell a car of cabbage was fully exhausted when the sale was contracted on the terms authorized, and any further act relative thereto, to be binding on the principal, must have been authorized or ratified with full knowledge thereof.

3. **Brokers ⬄100 — Purchaser from brokers with knowledge of seller's identity charged with knowledge of broker's authority.**

One contracting with brokers for the purchase of goods with knowledge of the identity and place of business of the owner thereof is charged with knowledge of the character and extent of the authority conferred on such brokers with respect to the sale and subsequent dealings in reference thereto.

4. **Brokers ⬄94—No implied power to discharge purchaser from contract or relieve from terms.**

Brokers employed to contract a sale of a car of cabbage did not have the implied power to discharge the contract or to relieve the purchaser from any of its terms, as the power to make another contract or change the terms of that made cannot be implied, or the authority conferred extended by construction, unless necessary to the proper exercise of the power expressly granted.

5. **Brokers ⬄106—Purchaser must show that brokers had authority to abrogate terms of original agreement.**

To avoid liability on a contract with brokers for the purchase of goods on the ground of a subsequent contract with them abrogating the terms of the original agreement, the burden is on the purchaser to show that the brokers had authority to act for their principal in making such subsequent contract, though they represented the seller as well as the purchaser in making the original contract.

6. **Brokers ⬄106 — Statements and acts of brokers held insufficient to establish authority to make adjustment contract.**

. Brokers' statements advising the purchaser with whom they executed a contract for the

sale of a car of cabbage to accept the car, and that the seller would adjust defects and shortage complained of, and their acts in reporting such defects and shortage to the seller, who immediately repudiated such statements and acts, *held* insufficient to establish their authority to make such subsequent contract.

**7. Brokers ☜100 — Purchaser not relieved from liability by subsequent unauthorized adjustment agreement with brokers.**

Under a contract for the sale of a car of cabbage providing that, if the buyer gave the railroad a clear receipt for damaged goods, it was at his risk, that all claims on delivered sales must be filed within 10 days after arrival, and immediate notice given of shortage, etc., the buyer had the right to inspect the car and reject it if not found in satisfactory condition, without liability to the seller, but, having accepted it and paid the seller's draft, he was not relieved from liability by a subsequent unauthorized adjustment agreement with the brokers with whom the contract was made.

**8. Appeal and error ☜1175(1)—On reversal of judgment in case fully developed in trial court, appellate court will render proper judgment.**

Where the case was fully developed in the trial court, the Court of Civil Appeals, on reversing the judgment, will render such judgment as should have been rendered below.

Appeal from Dallas County Court.

Action by N. Nigro & Co. against the Grovier-Starr-Parvin Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

J. W. Gormley and Thomas, Frank, Milam & Touchstone, all of Dallas, for appellant.

VAUGHAN, J. Appellee instituted this suit against appellant December 15, 1919, in justice court precinct No. 1, Dallas county, to recover damages in the sum of $174.27 alleged to have been sustained by reason of short weight and defective condition of a car of cabbage purchased by appellee December 2, 1919, from appellant through Tucker-Finch Company, a firm of brokers, of Forth Worth, Tex. From the judgment rendered in justice court in favor of appellee for the sum of $174.27, appellant prosecuted appeal to the county court at law No. 2, Dallas county, where trial was had November 17, 1920, resulting in judgment for appellee for the sum of $174.27, from which judgment appeal to this court was duly prosecuted.

Following are all of the facts established by the evidence:

Appellee N. Nigro, doing business under the trade-name of N. Nigro & Co., produce dealer, of Dallas, Tex., purchased a car of cabbage December 2, 1919, through the Tucker-Finch Company, brokers of Fort Worth,

Tex., from appellant, produce dealer of Fort Worth, Tex. In said transaction the brokers acted through Mr. Finch of said company. Appellant did not give said Finch individually, or the Tucker-Finch Company, any special authority with reference to said car, but dealt with him and the Tucker-Finch Company as an ordinary broker. Appellee knew that the Tucker-Finch Company did not own the cabbage contracted for and were only acting in the premises as brokers. The sale was confirmed by invoice of date December 2, 1919, on printed form, and filled in by typewritten matter showing date of sale December 2, 1919; purchaser, N. Nigro & Co., Dallas, Tex.; seller, Grovier-Starr-Parvin Company, appellant; and containing the following provisions:

"Our responsibility ends with the delivery of this shipment to the railroad or express company in good order. If you give the railroad or express agent clear receipt for damaged goods, it is at your risk. All claims on delivered sales must be filed within ten days after arrival of car, properly supported by certified public scale tickets and signed affidavit of party unloading, also freight bill indorsed by agent. No claims for shortage will be considered unless accompanied by certified weight by public weigher and we are notified immediately," which was attached to draft made by appellant on appellee for $839.50, appellant's name being signed to each instrument.

The draft was paid December 13, 1919.

When the car arrived in Dallas, appellee personally inspected the cabbage and found same in bad condition, immediately notified Tucker-Finch Company, at Fort Worth, that the cabbage were not in good condition and that he would not accept same unless protected against loss. Appellee was advised by said Finch to accept said car and that appellant would later adjust said defects and shortage; that before honoring draft with bill of lading attached appellee opened the car, inspected its contents, unloaded and weighed same, and found invoice short in weight after allowing the usual 5 per cent. shrinkage, 2,275 pounds, and found damaged and unsalable cabbage to the extent of 2,066 pounds. Weights were determined by appellee on his own scales and not by a public weigher. Appellee's claim was not accompanied by certified weight of public weigher within 10 days after arrival of car, or at any time thereafter. Appellee gave railway company transporting car of cabbage clear receipt for same, the only notation on the freight bill being as follows: "Inspected after unloading and cabbage shows more or less decay," signed by representative of railway company.

Appellee had the right to inspect the car of cabbage on arrival in Dallas and reject same if not found to be in condition repre-

sented *at time of* purchase less the 5 per cent. allowed· for shrinkage. Immediately on such inspection being made by appellee, he communicated the results to Mr. Finch, of Tucker-Finch Company, brokers, and Mr. Finch reported the defects and shortage claimed by appellee to appellant. Appellant thereafter, through its general manager, informed appellee that his recourse for any claims for defects or shortage was against the railway company. Neither Tucker-Finch Company nor said Finch had any authority to act for or represent appellant any further in said transaction after having negotiated the sale of said car of cabbage to appellee.

[1] Appellee's objections to appellant's assignments of error, being considered, are not well taken, especially as to assignments "relating to fundamental errors of law apparent upon the record," sufficient being revealed to make such errors clearly open to observation (see old rule 34 for Courts of Civil Appeals [142 S. W. xii]). Therefore, said objections are overruled.

[2] Appellant's brief was filed August 10, 1921, under old rules. The new rules for briefing *cases* amending rule 34, while adopted June 22, 1921, were not effective until September 1, 1921 (230 S. W. vii). We have searched the statement of ·facts in vain for evidence conferring authority on Tucker-Finch Co., brokers, to represent or act for appellant in any other capacity than' that of "brokers" as that term is well and generally understood and commonly used in the mercantile world. Jackson et al. v. Butler, 21 Tex. Civ. App. 379, 51 S. W. 1095. Under the evidence all authority conferred by appellant on Tucker-Finch Company was fully exhausted when the sale of *the car of* cabbage had been contracted to appellee on terms authorized by appellant, and any further act on the part of said brokers touching such completed transaction, in order to be binding on appellant, should have been· authorized prior thereto by appellant or with a full knowledge of the acts of such unauthorized agents ratified by appellant.

[3, 4] Appellee knew that appellant was the real owner of the cabbage, and its place of business, and therefore, in his dealings with Tucker-Finch Company, was charged with knowledge of the character and the extent of the authority in fact conferred on said brokers to represent appellant in the sale of said car of cabbage, and to what extent, if any, said brokers had authority to act for appellant in any subsequent dealings with appellee in reference to said car after the transaction resulting in the sale of the cabbage had been closed. Without such authority, the agreement on the part of said brokers to change or alter in any respect the terms of the contract originally made, as evidenced by the written invoice, was the act of an unauthorized agent and, under the facts established by the evidence, not binding· in any respect upon appellant. Morgan v. Harper (Tex. Com. App.) 236 S. W. 71. Appellee knew he was dealing with special agents and was therefore chargeable with notice of the limitations placed by appellant on the agency created. Therefore, in order to bind appellant, the authority conferred must be strictly followed. Fidelity Trust Co. v. Fowler (Tex. Civ. App.) 217 S. W. 953. The authority conferred by appellant on Tucker-Finch Company as brokers to act for appellant in making the sale to appellee being all that was necessary to carry out the purpose for which the agency was created, additional power necessary to make another contract or change the terms of the one made in reference to the sale of said car of cabbage cannot be implied or the authority in fact conferred extended by construction unless necessary to the proper exercise of the power expressly granted. Because Tucker-Finch Company were the agents of appellant to contract a sale of the car of cabbage to appellee, they did not have the implied power after making such contract to' discharge it *or to relieve appellee from any* of its terms arising solely from the authority originally conferred. East Texas Fire Ins. Co. v. L. & H. Blum, 76 Tex. 653, 13 S. W. 572.

[5, 6] Conceding that said brokers were the agents representing appellant and appellee in the making of the contract, such agency ceased when the contractual relationship had been entered into by said parties, and the burden was on appellee to show that after the making of said contract said brokers had authority to act for appellant in the making of the subsequent contract abrogating terms of the original agreement in order to bind appellant thereby. Groneweg & Schoentgen Co. v. Estes, 144 Mo. App. ·418, 128 S. W. 786. This burden appellee signally failed to discharge; the nearest approach being the meager statement and acts of the brokers (which appellant at once repudiated when informed in reference thereto) by which, alone, the authority of said brokers as agents for appellant to make said subsequent contract cannot be established.

[7] Appellee had the right to inspect the car of cabbage and, if not found to be in satisfactory condition, to reject same without incurring any liability to appellant—this was the full measure of his rights within the terms of the original contract. When he accepted same and paid appellant's draft, he was not protected from the terms of said contract by the subsequent agreement made with the brokers, but his acts and conduct were within, and to be determined by, the terms of said original contract. Said brokers had no authority to contract with appellee for an adjustment to be made on the cabbage in violation of the terms of the orig-

inal contract and could not change or rescind any of the provisions of said contract above quoted so as to make same binding on appellant. Therefore appellant was not under any moral or legal obligation to comply with same. Jackson et al. v. Butler, supra.

[8] The record shows that the case was fully developed in the trial court. Therefore it is our duty to here render such judgment as should have been rendered by that court.

The judgment of the trial court is reversed, and judgment here rendered in favor of appellant that appellee take nothing by his suit against appellant, and that all costs incurred in this court, justice court, and the county court at law No. 2, be and the same are hereby taxed and adjudged against appellee.

Reversed and rendered